## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 05 2017, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.H.,<br>*Appellant-Respondent,*<br><br>v.<br><br>Marion County Department of<br>Child Services, et al.,<br>*Appellees-Petitioners* | April 5, 2017<br><br>Court of Appeals Case No.<br>49A02-1610-JC-2403<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Marilyn Moores,<br>Judge<br><br>The Honorable Diana Burleson,<br>Magistrate<br><br>Trial Court Cause No.<br>49D09-1312-JC-17336 |

**Altice, Judge.**

## Case Summary

[1] This CHINS case began in December 2013, but S.H. (Father) did not appear in the case until July 2016, shortly after the permanency plan regarding Z.B. (Child) changed from reunification to adoption. Father claimed to have been previously unaware of the proceedings. With the assistance of appointed counsel, Father filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B)(6), claiming that the CHINS adjudication as to him was void due to ineffective service of process. He appeals the trial court's denial of this motion.

[2] We affirm.

## Facts & Procedural History

[3] The Indiana Department of Child Services (DCS) removed Child – then age ten – from the care of his mother (Mother) in Indianapolis on December 6, 2013, after Child was physically abused by Mother's boyfriend. Because Father's whereabouts were unknown, Child was placed with his maternal grandmother, where he has remained.

[4] DCS filed a CHINS petition on December 10, 2013. That same day, the trial court held a detention hearing, at which Mother appeared but not Father.[1] The court then continued the initial hearing until December 27. DCS made diligent efforts to locate Father and, on December 16, sent service by certified mail to

---

[1] The CHINS proceedings also involved Child's half-brother K.B., who has a different father than Child.

935 E. Dixon Street in Kokomo.[2] This was the address for Father's father, D.H., as well as the last known address Mother had for Father. D.H. signed the green card for the certified mailing on December 18, 2013. Additionally, a family case manager apparently spoke with Father and informed him of a hearing set for January 10, 2014. Father did not appear for that or any other hearings.

[5] On February 21, 2014, Mother entered into an agreement with DCS and admitted that Child was a CHINS. Child was so adjudicated as to Mother. The court then set a fact-finding hearing as to Father for March 14, 2014. More than two weeks prior to this hearing, DCS sent a letter to Father at the Dixon Street address to inform him of the upcoming hearing.

[6] The trial court held the March 14, 2014 hearing in Father's absence and adjudicated Child a CHINS as to Father. The court ordered no services for Father "until he makes himself available to the Court and demonstrates the willingness and ability to appropriately care for the child." *Appellant's Appendix, Vol. III* at 103.

[7] The CHINS proceedings continued for another two years without Father's involvement. On March 11, 2016, the trial court changed the permanency plan for Child from reunification to adoption. Termination proceedings began on

---

[2] This certified mailing included a letter from DCS, a summons, an advisement of rights form, and the CHINS petition.

April 13, 2016, under Cause No. 49D09-1604-JT-316. Father appeared in the termination case on May 31, 2016, at which time he was appointed a public defender. Father filed a motion to dismiss in the termination case on June 21, 2016, arguing that he had not been properly served in the underlying CHINS action. This motion was denied.

[8] In the meantime, Father appeared for the first time in the CHINS case at a review hearing on July 1, 2016, and the court appointed the same public defender that Father had for the termination case. On July 19, 2016, in the CHINS case, Father filed a motion for relief from judgment based on T.R. 60(B)(6). He argued that the March 14, 2014 judgment entered against him was void because the court lacked personal jurisdiction over him.

[9] The trial court held a hearing on Father's motion on August 12, 2016. Father testified that he lived with his father at the Dixon Street address for several months in 2013 – two months in the spring and then again for a little over a month in September/October. Father indicated that he then stayed with his girlfriend for about a month before he "began to couch surf" for several months. *Transcript* at 20. He explained, "I didn't have a designated actual spot that was in my name up until about April [2014] up in Kokomo." *Id*. In April 2014, he moved into an apartment in Kokomo and stayed there until April 2015. He then moved to another apartment in Kokomo before moving to Indianapolis in January 2016.

[10] Father testified that between September 2013 and April 2016 his mail came to either the Dixon Street address in Kokomo or his mother's address in Indianapolis. He explained, "I never did that change of mail thing". *Id.* at 23. Accordingly, he continued receiving mail at the Dixon Street address for more than two and a half years after September 2013. Additionally, Father presented the trial court with a current state identification card (expiring 2019) that listed the Dixon Street address.

[11] The trial court took Father's T.R. 60(B) motion under advisement and then issued its decision on September 23, 2016, denying the motion. Father now appeals.[3]

## Discussion & Decision

[12] Father brought his motion for relief from judgment under T.R. 60(B)(6), alleging that the March 14, 2014 judgment was void for lack of personal jurisdiction because he had no notice of the CHINS proceedings. Specifically, he argues that he received insufficient service of process because he did not live with his father at the time of service.

[13] Personal jurisdiction is a question of law and, thus, our review is de novo. *Jordache White & Am. Transp., LLC v. Reimer*, 61 N.E.3d 301, 305 (Ind. Ct. App. 2016), *trans. denied*. Although we do not defer to the trial court's legal

---

[3] The termination proceedings have been stayed pending the outcome of this appeal.

conclusion as to whether personal jurisdiction exists, we will review its findings of fact for clear error to the extent that personal jurisdiction turns on disputed facts. *Id.*

[14] It is well established that a trial court may not acquire personal jurisdiction over a party if service of process is inadequate. *See Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 (Ind. Ct. App. 2014), *trans. denied*. The existence of personal jurisdiction is a constitutional requirement to rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

[15] Indiana Trial Rule 4.1 provides for service upon an individual. Relevant here, T.R. 4.1(A)(1) provides:

> **(A) In General.** Service may be made upon an individual, or an individual acting in a representative capacity, by:
>
> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter

Father argues that DCS did not comply with T.R. 4.1(A)(1) because the certified mailing was not sent to "his residence".[4]

[16] Father's testimony indicates that he was couch surfing within Kokomo at the time his father signed for the certified mailing on December 18, 2013.[5] Although he had not stayed at the Dixon Street address in Kokomo since sometime in October 2013, Father testified that he kept on receiving his mail at this address well beyond 2013. Additionally, Father continued carrying a current state identification card that listed the Dixon Street address. On these facts, it is evident that in December 2013 Father continued to use the Dixon Street as his residence.[6]

[17] Service was properly made pursuant to T.R. 4.1(A)(1), and the trial court obtained personal jurisdiction over Father, once D.H. signed the green card on Father's behalf at the Dixon Street address. Accordingly, the trial court did not err in denying Father's motion for relief from judgment.

[18] Judgment affirmed.

---

[4] Father does not argue that his father could not sign the green card as an individual acting in a representative capacity for Father. Accordingly, we do not address the issue.

[5] Father explained that for about six months after living with his father, he did not have "a designated actual spot" in Kokomo that was in his name. *Transcript* at 20.

[6] Father notes that the trial court did not expressly find that the Dixon Street address was Father's residence at the time of service. In its order, the trial court made several written findings but no conclusions. The findings, however, clearly lead to the trial court's implicit conclusion that the address was Father's residence for purposes of T.R. 4.1(A)(1).

Kirsch, J. and Mathias, J., concur.